IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE RESTRAINT OF: | ) ) ) | MISC. ACTION NO. 2:21cm3634-MHT |
| APPROXIMATELY 400 ROOSTERS, HENS, YOUNG CHICKENS, AND UNHATCHED CHICKENS LOCATED AT AND AROUND 4295 COUNTY ROAD 528, VERBENA, ALABAMA, 36091 | ) ) ) ) ) ) ) ) | (WO) |
| IN THE MATTER OF THE RESTRAINT OF: | ) ) ) | MISC. ACTION NO. 2:21cm3635-MHT |
| APPROXIMATELY 1,000 ROOSTERS, HENS, YOUNG CHICKENS, AND UNHATCHED CHICKENS LOCATED AT AND AROUND 4227 COUNTY ROAD 528, VERBENA, ALABAMA, 36091 | ) ) ) ) ) ) ) ) | (WO) |
| IN THE MATTER OF THE RESTRAINT OF: | ) ) ) | MISC. ACTION NO. 2:21cm3636-MHT |
| APPROXIMATELY 1,000 ROOSTERS, HENS, YOUNG CHICKENS, AND UNHATCHED CHICKENS LOCATED AT AND AROUND 4046 COUNTY ROAD 528, VERBENA, ALABAMA, 36091 | ) ) ) ) ) ) ) ) | (WO) |

**OPINION AND ORDER GRANTING
MOTION TO EXTEND RESTRAINING ORDER**

In these three cases, the government has sought a restraining order to prevent the owners of birds it contends are used in illegal cockfighting from disposing of the birds. The case is now before the court on the government's motion to extend further the court's restraining order. For the reasons below, the motion will be granted.

## I. Procedural History

On June 11, 2021, the government filed in each case an ex parte motion for a temporary restraining order to prevent any action that would result in the unavailability of the subject birds. That day, the court entered in each case a 14-day ex parte temporary restraining order pursuant to 21 U.S.C. § 853(e)(2) and 18 U.S.C. § 983(j)(3). After they were served with the restraining orders, the owners of the restrained birds, William Easterling, Billy and Tyler Easterling, and

2

Brent Easterling filed objections to the orders and requested a hearing.

After an evidentiary hearing held on June 25, 2021, the court entered a restraining order through August 13, 2021, pursuant to 21 U.S.C. § 853(e)(1)(B) and 18 U.S.C. § 983(j)(1)(B).  On motion of the government, the court then extended the restraining order for another 31 days, through September 13, 2021.

On September 13, the government filed the pending motion to extend the restraining order another 31 days.  In response, the Easterlings filed objections to the motion and requested a hearing.  After a conference call the following day, the court set the motion for an evidentiary hearing on September 17, and orally extended the restraining order until the hearing.

The court held an evidentiary hearing on the motion on September 17, 2021.  During the hearing, the government clarified that it is seeking a restraining order through October 29, 2021, as the next criminal

3

grand jury meets on October 26 through 29, 2021. After hearing the evidence and making certain findings, the court orally extended the restraining order until it could enter a written order resolving the motion.

## II. Applicable Law

Federal law makes it unlawful "for any person to knowingly sponsor or exhibit an animal in an animal fighting venture." 7 U.S.C. § 2156(a)(1). Section 2156(f)(1) defines the term "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment," with an exception not relevant here.[1] The statute also makes it illegal to "knowingly attend" such a "venture," 7 U.S.C.

---

1. The statute excludes from the definition of "'animal fighting venture' ... any activity the primary purpose of which involves the use of one or more animals in hunting another animal." 7 U.S.C. § 2156(f)(1).

4

§ 2156(a)(2), to "knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture," 7 U.S.C. § 2156(b), and to "knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture," 7 U.S.C. § 2156(d).

Section 2156 provides for the civil forfeiture of birds involved in such ventures. *See* 7 U.S.C. § 2156(e) ("Any animal involved in any violation of this section shall be liable to be ... forfeited to the United States at any time on complaint filed in any United States district court ... for any jurisdiction in which the animal is found ..."). Criminal forfeiture of such birds is also available by way of 28 U.S.C. § 2461 and 21 U.S.C. § 853. Section 2461 makes criminal forfeiture available in criminal cases for

acts for which civil forfeiture is authorized.  *See* 28 U.S.C. § 2461(c) ("If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure.  If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code.").  The statute further provides that "the procedures in ... 21 U.S.C. § 853 ... apply to all stages of a criminal forfeiture proceeding ...." *Id.*

To obtain a restraining order under 21 U.S.C. § 853 before the filing of an indictment or information, the government must show that "there is a substantial probability that the United States will prevail on the

6

issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture," 21 U.S.C. § 853(e)(1)(B)(i), and that "the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered," 21 U.S.C. § 853(e)(1)(B)(ii).

To obtain a restraining order before the filing of a civil complaint in forfeiture, the government must show that that "there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture;" and "the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party

against whom the order is to be entered." 18 U.S.C. § 983(j)(1)(B)(i) & (ii).

Restraining orders under either provision are effective for not more than 90 days "unless extended ... for good cause shown," or if an indictment or information or a civil complaint for forfeiture has been filed. 18 U.S.C. § 983(j)(1)(B)(ii); 21 U.S.C. § 853(e)(1).

## III. Discussion

Based on the evidence heard at the evidentiary hearings on September 17, 2021 and June 25, 2021, and based on the representations of the parties, the court finds that the government has met the requirements for issuance of a further restraining order through October 29, 2021, pursuant to 21 U.S.C. § 853(e)(1)(B) and 18 U.S.C. § 983(j)(1)(B).

On the basis of the evidence heard at the hearings, the court found and today reiterates that "there is a

8

substantial probability that the United States will prevail on the issue of forfeiture." 18 U.S.C. § 983(j)(1)(B)(i); 21 U.S.C. § 853(e)(1)(B)(i). During the hearings, the court saw and heard compelling evidence that the Easterlings are running a large-scale cockfighting operation that breeds roosters for cockfighting, sells and ships birds for purposes of cockfighting, and holds cockfights with the birds they breed at a cockfighting "pit" built on (or immediately adjacent to) their property, which is a wooden building with multiple rows of stadium-style seating arranged around a sand pit where birds fight. While the court need not catalogue all of the evidence it heard, it will discuss some of the key evidence. Perhaps the most compelling evidence was video obtained from William Easterling's cell phone, which clearly showed Brent Easterling participating in a cockfight at the above-mentioned cockfighting pit, while William Easterling watched with approval (along with other

9

spectators). Video obtained from Tyler Easterling's cell phone showed him on his (or another Easterling's) property having roosters spar with each other and encouraging a rooster on the ground to attack an immobilized rooster he held in his hands, which it jumped up and did after little prompting. Testimony from a case agent made clear that the Easterlings use such videos to show prospective buyers that the roosters they are selling are aggressive fighters, and the court so found. Testimony also established that one of the Easterlings sold gaffs or small knives that are attached to roosters' legs to increase their lethality in fights, and that government agents found a burn pit next to the Easterlings' cockfighting pit containing the carcasses of multiple birds and some of small metal knives that are attached to their legs during the fights.

    The Easterlings put forward two "expert witnesses" in an attempt to show that they raise birds for

10

legitimate purposes, such as for food or for bird collectors or bird shows.  These witnesses failed to convince the court that the primary purpose of the Easterlings' operations is legitimate; moreover, both ended up providing further evidence that the Easterlings run a cockfighting operation.  In particular, one of the experts testified that all of the roosters he saw on Brent Easterling's property were either too young or too old to fight.  Based on that testimony, the court found that the reason the roosters of fighting age were missing is that they had been used for cockfighting or sold for that purpose.[2]  As discussed earlier, forfeiture of birds involved in cockfighting is authorized by statute.  Accordingly, there is a substantial probability that the government

---

2. Clearly, the fact that some roosters on the farms are too young to fight proves nothing. They simply have not reached fighting age yet but will be fought or sold for fighting when at the right age. As for the roosters above fighting age, it stands to reason that a breeding operation needs to keep some male birds for purposes of breeding.

11

will prevail in seeking forfeiture of the birds at issue.

The court notes that many of the birds on the Easterlings' properties are hens or chicks, not roosters. While it is a closer call for the hens and female chicks, the court finds that the government is substantially likely to prevail in seeking forfeiture of them. The evidence made clear that the hens are an important part of the cockfighting operation, in that they are used to breed the fighting roosters, and thereby are involved in the cockfighting venture. *See* 7 U.S.C. § 2156(e). And the chicks are either future cockfighting roosters or future breeding hens.

Based on the evidence and representations of the parties, the court further finds that there is a substantial probability that failure to enter the requested restraining order will result in making the roosters unavailable for forfeiture. *See* 18 U.S.C. § 983(j)(1)(B)(i); 21 U.S.C. § 853(e)(1)(B)(i).

12

Counsel for the Easterlings made clear that, if the restraining order is lifted, the Easterlings would seek to sell the birds as soon as possible, because they are incurring significant costs in paying for their upkeep. The evidence made clear that they have in the past sold and would continue sell the birds across state lines; this likely would make the birds unavailable for forfeiture. Moreover, based on the record, there is no way to ensure that the roosters would not be used for cockfighting, and the roosters would face a serious risk of death if so used. This, too, would make them unavailable for forfeiture.

Finally, the court finds that "the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered." 18 U.S.C. § 983(j)(1)(B)(ii); 21 U.S.C. § 853(e)(1)(B)(ii). The Easterlings are incurring significant expenses to care for the birds during the pendency of the restraining

13

order. While Brent, Billy, and Tyler Easterling have other income, William Easterling is retired and on a limited budget. However, this hardship must be weighed against the government's need for the restraining order. The government primarily seeks forfeiture of the birds to keep them from being used or sold for cockfighting or for breeding more birds for cockfighting. Without an extension of the restraining order, the birds would almost certainly be used or sold for one of those purposes. Accordingly, the court finds that the government's need for the order outweighs the hardship on the Easterlings.

Finally, as the requested extension would result in the restraining order lasting more than 90 days, the government must show good cause for the requested extension, which would run through October 29, 2021, the end of the next meeting of the grand jury. *See* 18 U.S.C. § 983(j)(1)(B); 21 U.S.C. § 853(e)(1)(B). Based on the testimony of the supervising case agent, the

court finds that the electronic evidence gathered by the government is unusually extensive and that the government has acted in good faith and diligently in assessing the evidence gathered during its investigation. Moreover, the government plans to seek an indictment of the Easterlings, and the September 2021 grand jury has been cancelled due to the COVID-19 pandemic. The next grand jury meets October 26-29, 2021. As the cancellation of the September grand jury is not the government's fault, and based on the large quantity of data the government must review and its good faith in doing so, the court finds that there is good cause to extend the restraining order through October 29 to prevent loss of the restrained property.

***

Accordingly, it is ORDERED as follows:

(1) The government's motion to extend the restraining order (Doc. 23) is granted.

**(2)** The restraining order entered on June 25, 2021 pursuant to 21 U.S.C. § 853(e)(1)(B) and 18 U.S.C. § 983(j)(1)(B) (Doc. 16) is extended through October 29, 2021, at 5:00 p.m.

DONE, this the 20th day of September, 2021.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**